UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| MARY ROBERTSON, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 CV 50375 |
| | ) | Magistrate Judge Iain D. Johnston |
| CAROLYN COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Mary Robertson brings this action under 42 U.S.C. § 405(g), seeking remand of the decision denying her social security disability benefits. For the reasons set forth below, the case is remanded.

### I. BACKGROUND[1]

Ms. Robertson was 37 years old on the date of the ALJ's decision. R. 32. She had last worked full-time in July 2003, when her job as a scheduler in a nursing home was eliminated for budgeting reasons. R. 15, 155.

In September 2005, Ms. Robertson fell down stairs and started having back problems and then, a month later, neck problems. R. 34, 155.[2] A CAT scan and MRI were taken, and a doctor diagnosed her with multiple herniated disks in her lower back and neck. R. 34.

Over the next five, Ms. Robertson saw Dr. Stephen Geller for various ailments, including her back pain and also chronic anxiety. R. 241-46, 292-94, 381-82. She had numerous and regular visits with Dr. Geller. *Id.* During this same period, she also periodically saw other

---

[1] The following facts are only an overview. A more complete summary is set forth in the government's response brief, the ALJ's opinion, and the administrative record. The plaintiff did not include a fact section in her opening brief.

[2] There is also evidence in the record that she had some back pain before the fall. R. 16.

doctors, including Dr. Roh in March 2006 and Dr. MacKenzie in January 2008. R. 16, 18. Pain medications, such as Norco, were prescribed, and an epidural injection was given in February 2006, although it did not help with the pain according to Ms. Robertson. R. 16, 47.

On September 14, 2009, Ms. Robertson filed for supplemental social security income alleging that she became disabled on September 1, 2005. R. 11. After the claim was denied, an administrative law judge conducted a video hearing on April 8, 2011. Ms. Robertson testified that, among other things, she has chronic back pain that even with medication is an 8 on a scale of 10; her neck pain is a 6 out 10; if she stands more than 10-15 minutes, she has a throbbing sensation; conversely, if she sits for more than 10-15 minutes, she has to get up and walk around; she can walk about a block; she cannot lift more than a half a gallon of milk; she does not sleep well; she is on anti-anxiety medicine; and she does not drink but has occasionally smoked marijuana because it has helps with her anxiety. R. 15-16, 38.

Particularly relevant to this appeal, Ms. Robertson testified that she has to lie down "five to six times a day . . . maybe for 10, 15 minutes at a time." R. 39. Later in the hearing, Ms. Robertson's attorney posed the following question to the vocational expert:

> Q. [I]f an individual, five to six times a day must lay down for 10 to 15 minutes to relieve pain, would there be work for that individual?
>
> A. No, that would preclude work.

R. 62. Relating to this same issue, Ms. Robertson submitted a letter from Dr. Geller, stating:

> This is to verify that I am the personal physician for Ms. Robertson; she has neck and low back pain, interfering with her sleep. It would be helpful if she could lie down for 10-15 minutes 3-4 times during the day to relieve the pain in her back.

R. 385. The letter is dated April 14, 2011, which is six days after the hearing.

On August 26, 2011, the administrative law judge (ALJ) ruled that Ms. Robertson was not disabled. He first found that Ms. Robertson had severe impairments of degenerative disease

of the cervical and lumbar spine, obesity, depression, anxiety, and a history of marijuana abuse. R. 13. The ALJ then determined that Ms. Robertson had a residual functional capacity to do sedentary work with certain exceptions, including that she could stand or walk with normal breaks for up to 2 hours in an 8 hour day and that she could sit with normal breaks for up to 6 hours but must be allowed to alternate from a seated position to a standing position as needed. R. 14-15. Based on the testimony of the vocational expert, the ALJ found Ms. Robertson could perform the jobs of ticket taker, assembler, and bench hand. R. 20.

## II. LEGAL STANDARDS

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). If the Commissioner's decision lacks evidentiary support or adequate discussion, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Moreover, a reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Indeed, even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does

not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

### III. DISCUSSION

In her opening brief, which is just over three pages, Ms. Robertson asserts only one argument for a remand: the ALJ failed to correctly apply the treating physician rule. Her main complaint appears to be that the ALJ did not credit Dr. Geller's opinion in his April 14th letter that Ms. Robertson would need to lie down three or four times during each work day. This Court agrees that a remand is required.

The treating physician rule is based on 20 C.F.R. §404.1527(c)(2). Under this section, a treating physician's opinion is entitled to controlling weight if it is supported by medical findings and consistent with other substantial evidence in the record. *Id.*; *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014).

If the ALJ does not give the treating physician's opinion controlling weight, the ALJ cannot simply disregard it without further analysis. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). Instead, the ALJ must determine what specific weight, if any, the opinion should be given. *Moss v. Astrue*¸ 555 F.3d 556, 561 (7th Cir. 2009). To make this determination, the ALJ must apply the checklist of factors set forth in 20 C.F.R. § 404.1527(c)(2). *Campbell*, 627 F.3d at 308 (referring to the factors as a "required checklist"); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008).[3] Failure to apply checklist is reversible error. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (ALJ disregarded checklist); *Moss*, 555 F.3d at 561 ("the choice to accept one physician's opinions but not the other's was made by the ALJ without any consideration of the

---

[3] The factors are: (1) the length of treatment; (2) the nature and extent of the treatment relationship; (3) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's degree of specialization; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6).

factors outlined in the regulations"). Similarly, ALJs commit reversible error by simply stating that they considered the checklist without showing in their decisions that they did, in fact, consider them. *See Campbell*, 627 F.3d at 308 ("Here, the ALJ's decision indicates that she considered opinion evidence in accordance with [the checklist]. However, the decision does not explicitly address the checklist of factors as applied to the medical opinion evidence."). In other words, ALJs must show their work.

Here, the ALJ did not follow this rule. First, the ALJ did not explicitly analyze why Dr. Geller's opinion was not given controlling weight. It is undisputed that he was a treating physician. Specifically, the ALJ did not explicitly analyze (i) whether Dr. Geller's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or (ii) whether it consistent with the "other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). This by itself is reversible error. *Clifford v. Apfel*, 227 F.3d 863, 870-71 (7th Cir. 2000) (reversing and remanding because the ALJ failed to determine whether the treating physician's findings were entitled to controlling weight).

Second, the ALJ did not determine what specific weight should be given to Dr. Geller's opinion, nor did he explicitly apply the checklist factors. No finding was made, for example, about the length of the treating relationship or the number of times Dr. Geller saw Ms. Robertson. The ALJ did discuss evidence from various doctors, including Dr. Geller, but he did not analyze their degree of specialization and whether this issue may have affected his decision.

In its response brief, the government essentially argues that the ALJ implicitly applied these factors based on a few statements about Dr. Geller in the ALJ's opinion. Dkt. # 21 at 6-8. The most relevant one is the following:

> On April 14, 2011, Dr. Geller [indicated] that it would be helpful if the claimant could lie down for 10-15 minutes, 3-4 times a day to relieve her back pain (Exhibit 15F). Dr. Geller failed to identify the clinical findings that would necessitate rest periods 3-4 times a day. Stated limitations are not supported by or consistent with the previous medical record.

R. 18. The government relies heavily on this brief passage to argue that the checklist factors were indeed applied.

The third sentence in the above passage does contain the words "supported" and "consistent" that nod toward two of the checklist factors. The second sentence arguably provides the beginning of an analysis, stating that the April 14th letter fails to identify clinical findings. However, the Court finds the above passage is not sufficient to establish that the ALJ was in fact applying the complete checklist.

As an initial matter, the above passage is embedded in what is essentially a long fact section where the ALJ mostly recounts the evidence without analysis. It is not a part of the later analysis section where the ALJ explained the basis for his decision. *See* R.18. More substantively, in the above passage, the ALJ fails to explain why he concluded that Dr. Geller's opinion was not consistent with the other medical evidence. It is true that the letter on its face does not identify or discuss clinical findings. But this simple fact is not dispositive by itself given that Dr. Geller had seen Ms. Robertson numerous times over the last five years. His treatment notes reflect that, over this lengthy period, he had performed various tests and had reviewed other evidence, such as MRIs. Moreover, he had examined Ms. Robertson only a few months before this letter was written and had performed certain tests during that visit. *See* R. 382 (treatment notes from February 4, 2011 visit). Thus, it is possible Dr. Geller based this one opinion on this visit a few months earlier or on the overall long-term relationship. The ALJ did not discuss this possibility.

The only other substantive commentary the ALJ gave about Dr. Geller is at the end of the analysis section on the top of page 19. There, the ALJ stated that, on January 26, 2010, Dr. Geller noted that the back pain had "considerable psychological overlay" and recommended stretching and hot soaks. *Id.* On March 16, 2009, Dr. Geller encouraged Ms. Robertson to exercise more. Here again, the ALJ's analysis is not complete. He relies on these two visits to suggest that Dr. Geller did not find her pain to be severe, but then the ALJ does not address the other evidence arguably pointing in the opposite direction. For example, in Dr. Geller's January 26, 2010 notes, he stated that the back pain was worsening. R. 293. Although he did recommend stretching and hot baths, he also prescribed Toradol for the pain. R. 294. Further analysis would provide this Court with a better understanding of what weight the ALJ gave to Dr. Geller's relationship as a treating physician.

In sum, the ALJ has not set forth enough explanation to allow this Court to trace the path of his reasoning regarding Dr. Geller. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). Accordingly, a remand is required.

## IV. CONCLUSION

For the reasons given, plaintiff's motion for summary judgment is granted, the government's motion is denied, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Date: December 1, 2014    By: _____
Iain D. Johnston
United States Magistrate Judge